**Stephen HILYER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (JOSEPH T. PASTRILL, JR. LOGGING), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2004.

Decided April 21, 2004.

Michael T. Koehler, Erie, for petitioner.

George J. Steffish, III, Butler, for respondent.

BEFORE: McGINLEY, Judge, COHN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Stephen Hilyer (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed an order of a Workers' Compensation Judge (WCJ). The WCJ concluded that Joseph T. Patrick, Jr. Logging (Employer) was entitled, pursuant to the Penn-

sylvania Workers' Compensation Act[1] (the Act), to the right to request and receive a second Impairment Rating Evaluation (IRE) within a twelve-month period. We affirm.

Claimant worked for Employer as a logger when, on April 29, 1997, he was struck on the head by a falling tree limb, suffering a work-related injury to his spinal cord. Claimant subsequently began receiving benefits under the Act.

On May 14, 2001, Claimant underwent an IRE by Dr. Matthews, which evaluation yielded an impairment rating of 55 percent. Employer objected to Dr. Matthews' impairment rating, asserting that a non-work related injury had been considered in rendering the determination. Thereafter, Employer's insurer, the State Workers' Insurer Fund (Insurer),[2] requested that Claimant submit to a second IRE, which Claimant refused.

On February 4, 2002, Insurer filed a Review Petition alleging that Claimant had refused the requested second IRE. Claimant timely answered Insurer's Petition, denying that Insurer was entitled to a second IRE due to Claimant's submission to the initial IRE.

Hearings before the WCJ were subsequently held, at which the sole issue was stipulated by the parties to be Insurer's entitlement, under the Act and its promulgated regulations, to a second IRE. Both parties submitted written argument to the WCJ, who concluded that the Act did grant Insurer the right to request and receive an IRE twice in a twelve-month period.

By order dated July 9, 2002, the WCJ granted Insurer's Petition, and further ordered Claimant's attendance at a second IRE. The WCJ further ordered that, in the face of Claimant's failure to so attend as ordered, Insurer shall be entitled to a suspension of Claimant's benefits. Claimant timely appealed the WCJ's order and decision to the Board.

The Board thereafter heard Claimant's appeal without taking additional evidence. In its opinion, the Board specifically rejected Claimant's argument that Insurer was not entitled to a second IRE within twelve months without providing additional evidence that the status of the impairment has improved, and affirmed the order and decision of the WCJ. Claimant now timely appeals to this Court.

■ This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of Board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

■ Claimant presents one issue for our review: whether the WCJ erred as a matter of law in granting Insurer's request for an additional IRE under the relevant provision of the Act, and its promulgated regulation. Claimant argues that Insurer is not entitled to a second IRE without a showing that the status of Claimant's disability has changed sufficiently to rebut the presumption of continuing disability. We disagree, in that the Act clearly does not require—either implicitly, and unarguably not explicitly—such a prefatory showing as a condition precedent to a second requested IRE. The Act, in both its partic-

---

1.  Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2.  Employer initiated this proceeding by and through Insurer. Both parties shall hereinafter be referred to, collectively, as Insurer.

ular provisions and when read as a whole, grants an Insurer the right to a second IRE within a twelve-month period upon timely request thereof without any prefatory showing.

Section 306(a.2) of the Act[3] reads, in part relevant to the matter *sub judice:*

Medical examination; impairment rating

(1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impair-

ment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall then receive partial disability benefits under clause (b): Provided, however, that no reduction shall be made until sixty days' notice of modification is given.

* * *

(5) Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(6) **Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of Section 314 to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than two independent medical examinations under this clause during a twelve-month period.**

* * *

(8)(i) For purposes of this clause, the term "impairment" shall mean an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent.

(ii) For purposes of this clause, the term "impairment rating" shall mean the percentage of permanent impairment of the whole body resulting from the compensable injury. The percentage rating for impairment under this clause shall rep-

---

**3.** *Added by* the Act of June 24, 1996, P.L. 350.

resent only that impairment that is the result of the compensable injury and not for any preexisting work related or non-work related impairment.

77 P.S. § 511.2 (emphasis provided). Additionally, the Bureau of Workers' Compensation (Bureau) has enacted the following regulation:

> The insurer maintains the right to request and receive an IRE twice in a 12–month period. The request and performance of IREs may not preclude the insurer from compelling the employe's attendance at independent medical examinations or other expert interviews under Section 314 of the Act (77 P.S. § 651).

34 Pa.Code § 123.102(g) (emphasis provided).

By its own terms, and as interpreted by this Court, Section 306(a.2) provides for a procedure to determine whether a claimant, who has received 104 weeks of total disability benefits, should continue receiving total disability benefits, or should have those benefits modified to reflect the claimant's determined partial disability. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 814 A.2d 884 (Pa.Cmwlth.2003). This continuation or modification is based on the claimant's degree of impairment as determined in accordance with Section 306(a.2): an IRE resulting in an impairment rating equal to or greater than 50 percent gives rise to a presumption of continuing total disability, and entitles the claimant to continuing receipt of total disability benefits. *Id.* at 886. Conversely, an IRE resulting in an impairment rating of less than 50 percent can concomitantly result in a modification of the claimant's benefits to reflect partial disability, upon 60 days notice. *Id.* This special procedure was part of the General Assembly's 1996 reform effort intended to reduce rising Workers' Compensation costs and restore efficiency to the Workers' Compensation system. Torrey and Greenberg, *Workers' Compensation Law and Practice*, Section 1510 at 294.

In *Gardner*, we addressed the timeliness of an employer's initial IRE request, an issue not before us in the instant matter. However, our *en banc* decision in *Gardner* recognizes Subsection (1) of Section 306(a.2) to be the starting point in the IRE process. Further, *Gardner* reads Sections 306(a.2)(1) and 306(a.2)(6) in *pari materia*[4] by concluding that "when the insurer has initiated the procedure in a timely manner and has not obtained a claimant impairment rating of less than fifty per centum, the insurer may seek additional independent medical examinations under Section 314 of the Act [77 P.S. § 651] to obtain an IRE, but no more than two during a twelve-month period." *Id.* at 886–887 (emphasis and footnote omitted).

This Court again interpreted the express language of Section 306(a.2), when read as a whole, consistently with *Gardner* in *Dowhower v. Workers' Compensation Appeal Board (Capco Contracting)*, 826 A.2d 28 (Pa.Cmwlth.2003). In *Dowhower* we again addressed the timeliness of an initial employer IRE request. In so doing, however, we again noted that Sections 306(a.2)(1) and 306(a.2)(6) protect "claimants from incessant IREs by **permitting no more than two IREs in a 12–month period.**" *Dowhower*, 826 A.2d at 31 (emphasis provided). Our reading of Section 306(a.2) in both *Gardner* and *Dowhower* is clearly consistent with the actual language of the Section itself, which expressly allows for two Independent Medical Examinations (IME) within a twelve-month period

---

**4.** *Gardner*'s reading of these Subsections in *pari materia* is consistent with Section 1932 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1932.

"to determine the status of impairment". 77 P.S. § 511.2(6).

Claimant's attempt to assert that a prefatory showing that a change in a claimant's disability must be made prior to a request for a second impairment rating evaluation—whether such evaluation is semantically styled as an IME or an IRE—is additionally grounded in Claimant's assertion that such a showing would be consistent with the Act's mandate to be construed liberally in favor of injured workers. However, such a prefatory showing is quite plainly not present anywhere within the text of Section 306(a.2), and it is axiomatic that when the words of a statute are free and clear from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b); *Gardner*, 814 A.2d at 886, n. 7.

Consequently, in the matter *sub judice*, the WCJ and the Board founded their decisions and orders directly upon the Act's own express language, and read the Act consistently with the above-cited precedents, in determining that Insurer was entitled to request two IREs within twelve months. Accordingly, the Board did not err as a matter of law in so holding.

Claimant further founds his primary argument upon his assertion that the Act's definition of impairment in Section 306(a.2)(8)(i) reasonably presumes an abnormality or loss resulting from a compensable injury to be permanent. Thus, Claimant argues, once it is determined that a claimant's impairment rating is greater than 50 percent, there is no need to conduct additional IREs without prior evidence from an IME that the condition or status has improved sufficiently to rebut the condition presumed to be permanent.

Claimant, however, premises this argument on an incorrect assumption that an IRE and an IME are mutually exclusive concepts.

Claimant ignores the actual language of Section 306(a.2), which states that the goal of an IME thereunder is to "determine the status of **impairment**." 77 P.S. § 511.2(6) (emphasis provided). We also note that Claimant's argument on this point fails to acknowledge that Section 306(a.2)(6), providing for the request of and submission to an IME, has been placed within the context of Section 306(a.2) as a whole, and the fact that every other subsection therein relates to the impairment process. These interrelated provisions each refer to an examination in the context of determining impairment rating, and they clearly treat an IME as a type of IRE.[5] Accordingly, Section 306(a.2)(6) is properly read as permitting a maximum of two IREs in a twelve-month period.

Finally, Claimant also argues that the statutory construction and plain language of Section 306(a.2) has been improperly altered by the Bureau in its interpretation as articulated in 34 Pa.Code § 123.102(g), which states that "[t]he insurer maintains the right to request and receive an IRE twice in a 12–month period ..." We disagree. Under our foregoing analysis, as well as in accordance with our analyses in *Gardner* and *Dowhower*, we hold that Section 306(a.2)(6) itself, with its stated goal of "determining the status of impairment", grants an insurer the right to two IREs within a twelve-month period. Regulation 123.102(g), in clarifying an insurer's right thereto, is clearly consonant with the express language and goal of Section 306(a.2)(6). As such, that regulation is entitled to deference, as it is well estab-

---

**5.** Additionally, both *Gardner* and *Dowhower* treat IREs as a type of IME in reading Sec-

tions 306(a.2)(1) and 306(a.2)(6) in *pari materia*.

lished that an agency's interpretation of a statute it is charged with implementing should be afforded great weight, and overturned only if clearly erroneous. *See Cherry v. Pennsylvania Higher Education Assistance Agency*, 537 Pa. 186, 642 A.2d 463 (1994). Accordingly, we affirm.

### *O R D E R*

AND NOW, this 21st day of April, 2004, the order of the Workers' Compensation Appeal Board, dated April 23, 2003, at A02–2161, is affirmed.